Stephen M. Russo, P.C. (SMR-6449)
27 North Broad Street
Ridgewood, New Jersey
(201) 445-7611
(201) 251-7696
Email: Steve@jrusso.com
Attorney for the Plaintiff, John Gerard

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| JOHN GERARD | : | |
| | : | |
| Plaintiffs, | : | CASE NO. 06-5869 (JLL) |
| | : | **THE HONORABLE** |
| vs. | : | **JOSE L. LINARES** |
| | : | |
| | : | |
| EDWARD G. GLEASON, PRIME | : | |
| PLATE INDUSTRIES, INC. and | : | PLAINTIFFS' MOTION |
| CORBAN CORPORATION | : | FOR SUMMARY JUDGMENT |
| | : | |
| Defendants | : | Oral Argument is not Requested |
| | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR SUMMARY JUDGMENT**

On the Brief:
    Stephen M. Russo, Esq.

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ............................................ ii

**PRELIMINARY STATEMENT** ............................................ 1

**PROCEDURAL HISTORY** ............................................ 3

**STATEMENT OF FACTS** ............................................ 4

     I.     <u>PARTIES AND HISTORY</u> ............................................ 4
          a.  General Background ............................................ 4
          b.  Prior Course of Dealing ............................................ 4

     II.    <u>THE FEBRUARY 6, 2004 LOAN</u> ............................................ 5
          a.  The Parties Course of Performance ............................................ 6


**LEGAL ARGUMENT**.................................................................................... 7


     I.     <u>THE PARTIES' AGREEMENT IS GOVERNED BY NEW JERSEY</u>
            <u>CASE LAW AND NOT THE NEW JERSEY UNIFORM</u>
            <u>COMMERCIAL CODE</u> .................................................. 8


     II.    <u>THE PLAIN AND UNAMBIGUOUS LANGUAGE OF THE PARTIES'</u>
            <u>AGREEMENT OBLIGATES THE DEFENDANTS TO PAY</u>
            <u>THE PLAINTIFF UNDER THE LOAN AND THEREFORE THE</u>
            <u>COURT SHOULD GRANT THE PLAINTIFF'S MOTION</u>
            <u>FOR SUMMARY JUDGMENT.</u>................................................ 9

     III.   <u>THE PARTIES' COURSE OF PERFORMANCE SUPPORT</u>
            <u>JOHN GERARD'S CLAIM AGAINST ALL THREE DEFENDANTS</u>...... 11


CONCLUSION .................................................................... 12

## <u>TABLE OF AUTHORITIES</u>

### <u>STATUTES</u>

N.J.S.A. 12A:3-104   ................................................................................   8

### <u>CASES</u>

<u>Air Master Sales Co., v. Northbridge Park Co-Op, Inc</u>, 748 F. Supp. 1110 (D.N.J. 1990).... 10

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). ................................................8

<u>Assisted Living Associates of Moorestown, LLP v Moorestown TP.</u>,
31 F. Supp. 2d 389 (D.N.J. 1998).          ....................................................................... 9

<u>Borough of Princeton v Board of Chosen Freeholders of County of Mercer</u>,
755 A.2d 637, 333 N.J. Super. 310 (App. Div. 2000)........................................................... 11

<u>Caruso v Ravenswood Developers, Inc.</u> 767 A.2d 979,
337 N.J. Super 499 (App. Div. 2001)........................................................................ 9

<u>Celotex Corp. V. Catrett</u>, 477 U.S. 317 (1987).................................................................. 8

<u>Fidelity & Cas. Co. Of New York v Carll & Ramagosa, Inc.</u>,
243 F. Supp. 481, appeal dismissed 365 F. 2d 303 (D.N.J. 1965). ..................................... 10

<u>Kaufman v Provident Life and Cas. Ins. Co.</u>, 828 F. Supp. 275,
affirmed 993 F2d 877 (D.N.J. 1992). ............................................................................. 9

### <u>OTHER AUTHORITIES</u>

Federal Rules of Civil Procedure Rule 56.......................................................................... 7

Restatement (Second) of Contracts § 202(4), (1979)......................................................... 11

## **PRELIMINARY STATEMENT**

The Plaintiff, John Gerard ("Plaintiff") submits this Brief in support of his motion pursuant to Federal Rules of Civil Procedure 56 for an Order granting summary judgment on the Plaintiff's Amended Complaint. The Plaintiff is seeking a judgment against the defendants, Edward G. Gleason, Prime Plate Industries, Inc. and Corban Corporation in the amount of $187,877.23 plus counsel fees and court costs.

The Plaintiff, John Gerard is the owner of Central Leasing Company and a fifty percent (50%) owner of Madison Leasing Company. Both Madison Leasing and Central Leasing are in the Leasing business with offices located at 32 Central Avenue, Midland Park, New Jersey. The defendant, Edward G. Gleason is the president, CEO and owner of Prime Plate Industries, Inc and Corban Corporation. Prime Plate Industries and Corban Corporation were in the steel plating business. Prime Plate Industries coated steel for ship building at the Philadelphia ship yard in Philadelphia, PA.

In 2000 and 2001, Prime Plate Industries leased millions of dollars worth of steel plating equipment from the Plaintiff's leasing companies. In each lease transaction between the Plaintiff's leasing companies and the defendants, Edward Gleason was required to sign the lease documents as a personal guarantor.

The defendant, Edward Gleason was having trouble making Prime Plate Industries profitable. On July 2, 2002, the plaintiff, John Gerard made a personal loan to the defendants Edward Gleason and Prime Plate Industries to assist Mr. Gleason with his business enterprise. Mr. Gleason signed the July 2, 2002 promissory note both in his personal capacity and in his capacity as president and CEO of Prime Plate Industries.

On February, 2004, the defendant, Edward G. Gleason was still having trouble making

1

Prime Plate Industries profitable.  Mr. Gleason approached the Plaintiff and asked Mr. Gerard for

a second loan in the amount of $109,000.00 in order to pay Prime Plates's operating expenses.

Although Mr. Gleason was already in default on the July 2, 2002 loan, as well as his leases with

Madison Leasing and Central Leasing, John Gerard felt obligated to assist Mr. Gleason since he

was already so heavily invested in Prime Plates' success.

On February 6, 2004, the defendant, Edward G. Gleason went to John Gerard's office in

Midland Park, New Jersey and executed a three page promissory note both in his corporate

capacity as CEO of Prime Plate Industries, Inc. and Corban Corporation, as well as in his

individual capacity.  The February 6, 2004 promissory note listed Mr. Gleason's name and

address on the first page of the note and referred to him as "Promissors".  Page three of the note

consisted of a "Hot List" of Prime Plate's vendors that needed to be paid.  Page three of the note

obligated Mr. Gleason to provide John Gerard with copies of invoices and paid checks covering

the Hot List items.  Page three also obligated Mr. Gleason to issue a stock certificate for five

percent (5%) of the shares of Prime Plate Industries, Inc. To the John J. Gerard Foundation.  Mr.

Gleason signed page three of the note and dated it February 6, 2004.

On February 6, 2004, John Gerard wrote two checks payable to Edward Gleason which

totaled $109,000.00.  Mr. Gleason deposited Mr. Gerard's checks into his personal bank account.

On March 2, 2004, Mr. Gleason paid John Gerard $907.00 from his personal checking account.

Said payment corresponded with the amount of interest that was due on the February 6, 2004

note.

The defendant, Edward Gleason admits that he signed the February 6, 2004 promissory

note and hot sheet.  However, Mr. Gleason denies that he should be held personally liable on the

2

loan because page two of the note was signed only in his capacity as a corporate officer of Prime

Plate Industries, Inc. and Corban Corporation.  Mr. Gleason acknowledges that he signed the

"Hot Sheet" on February 6, 2004, but denies that the "Hot Sheet" is part of the promissory note.

Mr. Gleason acknowledges that Prime Plate Industries, Inc. and Corban Corporation are

liable under the February 6, 2004 note, but challenges the plaintiff's calculation of damages and

how the plaintiff applied payments to the note.  Mr. Gleason also acknowledges that Prime Plate

Industries, Inc. and Corban Corporation are now defunct and have not assets.

## PROCEDURAL HISTORY

On November 8, 2006, the plaintiff, John Gerard filed a complaint in the Superior Court

of New Jersey, Bergen County, Law Division bearing docket number BER-L-8343-06.  The

plaintiff's complaint alleged breach of contract and unjust enrichment against Edward G.

Gleason and Prime Plate Industries, Inc based upon $109,000.00 loan made by the plaintiff, John

Gerard to the defendants on February 6, 2004.

On November 30, 2006, the plaintiff filed an amended complaint naming Corban

Corporation as a party to the action based upon Mr. Gleason's execution of the February 6, 2004

promissory note as CEO of Corban Corporation.  On December 12, 2006, the defendants,

Edward G. Gleason, Prime Plate Industries, Inc. and Corban Corporation filed a notice of motion

in the Superior Court of New Jersey to have the case removed to Federal Court.  On February 2,

2007, the defendants filed an answer to the plaintiff's amended complaint.

On December 7, 2007, the case was arbitrated pursuant to Local Civil Rule 201.1 by

Burrell Humphreys, the Court appointed arbitrator. The defendant filed a de novo setting aside

the arbitration award.  The case was also sent out for mediation but was unable to settle.

## STATEMENT OF FACTS

I.    PARTIES AND HISTORY

    a. General Background

The plaintiff, John Gerard is a fifty percent owner of Madison Leasing Company, Inc. and

the majority owner of Central Leasing Co. Of NJ, LLC. (Gerard Decl.,¶ 2).  In or about May

2000, John Gerard was introduced by a broker to the defendant, Edward G. Gleason. (Gerard

Decl.,¶ 2).  Mr. Gleason was the sole owner of the defendant, Prime Plate Industries, Inc., a

newly formed steel plating company located in Philadelphia, Pennsylvania. (Gerard Decl.,¶ 2),

(Russo Decl., ¶ 17, Ex. O, Gleason Dep. 10:13-24 Nov. 20, 2007).  Mr. Gleason was seeking to

lease equipment for Prime Plate Industries, Inc. from Madison Leasing Co.  (Gerard Decl.,¶ 2).

    b. Prior Course of Dealing

On May 16, 2000, Madison Leasing Company, Inc leased approximately $5,000,000.00

worth of equipment to the defendant, Prime Plate Industries, Inc. (Gerard Decl.,¶ 3).  The

defendants, Edward Gleason and Corban Corporation signed as a personal guarantors on the

lease between Madison Leasing and Prime Plate Industries. (Gerard Decl.,¶ 3).  (Russo Decl., ¶

17, Ex. O, Gleason Dep. 27:1-25, 26:1-6 Nov. 20, 2007).

On November 1, 2001, the defendant, Prime Plate Industries leased additional equipment

from Central Leasing Co.  (Gerard Decl.,¶ 4).  The defendant, Edward Gleason signed as a

personal guarantor on the lease between Central Leasing and Prime Plate Industries.   (Russo

Decl., ¶ 17, Ex. O, Gleason Dep. 31:15-21 Nov. 20, 2007). The defendant, Corban Corporation

d/b/a Encor also signed as a corporate guarantor on the aforementioned lease. (Gerard Decl.,¶ 4).

The defendant, Edward G. Gleason struggled to make Prime Plate Industries profitable to no avail. (Gerard Decl., ¶ 5). Prime Plate Industries failed to make its lease payments to Madison Leasing and Central Leasing in a timely manner and both leases lapsed into default. (Gerard Decl., ¶ 5). Madison Leasing obtained a judgment against Mr. Gleason, Prime Plate Industries and Corban Corporation in the amount of $5,176,711.05. (Gerard Decl., ¶ 5). Central Leasing Co also obtained a judgment against Mr. Gleason, Prime Plate Industries and Corban Corporation in the amount of $267,427.05. (Gerard Decl., ¶ 5).

On July 2, 2002, the defendant, Edward G. Gleason borrowed $100,000.00 from the plaintiff, John Gerard. (Gerard Decl., ¶ 7), (Russo Decl., ¶ 5, Ex. D). The defendant, Edward G. Gleason signed the July 2, 2002 note both personally and on behalf of Prime Plate Industries. (Gerard Decl., ¶ 7), (Russo Decl., ¶ 5, Ex. D).  The July 2, 2002 loan was for a term of 90 days. (Gerard Decl., ¶ 7), (Russo Decl., ¶ 5, Ex. D).

The defendants, Edward G. Gleason and Prime Plate Industries defaulted on the July 2, 2002 loan and the plaintiff obtained a judgment against both Edward Gleason and Prime Plate Industries, Inc. in the amount of $100,833.33. (Gerard Decl., ¶ 7), (Russo Decl., ¶ 6, Ex. E).

II.    <u>FEBRUARY 6, 2004 LOAN</u>

On February 6, 2006, the defendant, Edward G. Gleason met the plaintiff at Mr. Gerard's office located at 32 Central Avenue, Midland Park, New Jersey.  (Gerard Decl., ¶ 11).  Mr. Gleason signed a promissory note which listed Edward Gleason as a "Promissor" and Prime Plate Industries, Inc. and Corban Corporation as "Principals". (Gerard Decl., ¶ 11), (Russo Decl., ¶ 7, Ex. F).  The note was prepared by Mr. Gerard, who is not an attorney and has no legal training.  (Gerard Decl., ¶ 11).

5

The note calls for monthly interest payments of $908.33, with interest at the rate of ten

percent. (Gerard Decl.,¶ 12), (Russo Decl., ¶ 7, Ex. F).  The note further states that if payment is

not made, in full, by April 30, 2004, then Mr. Gerard is entitled to a five percent (5%) late fee on

any unpaid balance. (Gerard Decl.,¶ 12), (Russo Decl., ¶ 7, Ex. F).  Mr. Gerard is also entitled to

interest which will accrue at a rate of fifteen percent (15%) after April 30, 2004 until the note is

paid in full. (Gerard Decl.,¶ 12), (Russo Decl., ¶ 7, Ex. F).  The note also entitled Mr, Gerard to

Attorney's fees and costs incurred by the plaintiff in collecting on the note. (Gerard Decl.,¶ 12),

(Russo Decl., ¶ 7, Ex. F).

Page two of the February 6, 2004 note was signed by Mr. Gleason as the CEO of Prime

Plate Industries and Corban Corporation.   (Gerard Decl.,¶ 13), (Russo Decl., ¶ 7, Ex. F). Page

three of the note is the hot list of Prime Plates's accounts payable, which is dated February 6,

2004 and further obligates Mr. Gleason to send Mr. Gerard copies of paid invoices from the hot

list and requires Mr. Gleason to issue a stock certificate for 5% of the shares of Prime Plate

Industries to the John J. Gerard Foundation. (Gerard Decl.,¶ 13), (Russo Decl., ¶ 7, Ex. F).

Edward Gleason signed the third page of the note in his individual capacity, and his signature

was witnessed by Deborah A. LaCorte, Mr. Gerard's assistant. (Gerard Decl.,¶ 13), (Russo Decl.,

¶ 7, Ex. F).

a. The Parties' Course of Performance

The loan checks totaling $109,000.00 were made payable to Edward G. Gleason and

deposited into Mr. Gleason's personal bank account at Chase Bank. (Gerard Decl.,¶ 14), (Russo

Decl., ¶ 8, Ex. G, ¶ 9, Ex. H,¶ 10, Ex. I).  On March 2, 2004, the defendant, Edward Gleason

made a payment of $907.00 to John Gerard from his personal bank account.   (Gerard Decl.,¶

14), (Russo Decl., ¶ 11, Ex. J).  The $907.00 payment corresponds with the first interest payment

due under the note.   (Gerard Decl.,¶ 14), (Russo Decl., ¶ 7, Ex. F).

The Plaintiff, John Gerard received payments totaling $17,147.33 from the defendants

between March 2, 2004 and March 13, 2006. (Gerard Decl.,¶ 17), (Russo Decl., ¶ 11, Ex. J, ¶ 12,

Ex. K,  ¶ 13, Ex. L,  ).   The plaintiff, John Gerard bifurcated the payments that he received from

the defendants from December 17, 2004 to March 13, 2006 between the July 2, 2002 loan and

the February 6, 2004 loan in proportion to the principal owed on each loan.  (Gerard Decl.,¶ 18),

(Russo Decl., ¶ 14, Ex. M).    The plaintiff, calculates his damages as of January 16, 2009 in the

amount of $187,877.23 plus counsel fees and costs.  (Gerard Decl.,¶ 19, Ex A).  The Plaintiff's

total counsel fees to date are $14,717.00, (Russo Decl., ¶ 16, Ex. O).

The defendant, Edward Gleason admits that Prime Plate Industries, Inc. is liable under the

February 6, 2004 note.  (Russo Decl., ¶ 17, Ex. O, Gleason Dep. 52:3-5, Nov. 20, 2007).   Mr.

Gleason also admits that he signed the February 6, 2004 note in his personal capacity, but claims

that he did not read the note prior to signing it.  (Russo Decl., ¶ 17, Ex. O, Gleason Dep. 44:6-25,

45:1-4, Nov. 20, 2007). Both Prime Plate Industries and Corban Corporation are no longer

operating and closed for business purposes.  (Russo Decl.  ¶ 18, Ex. Q, Defs. Ans. To Int. ¶ 10,

11).

## LEGAL ARGUMENT

This Court should grant Plaintiff's Motion for Summary Judgment on the Amended

Complaint.  Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary

judgment should be granted if the record demonstrates that there is no genuine issue as to any

material facts and the moving party is entitled to a judgment as a matter of law. Celotex Corp. V. Catrett, 477 U.S. 317 (1987). A material fact raises a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict" for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court should not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial. Id. At 249.

I.   THE PARTIES' AGREEMENT IS GOVERNED BY NEW JERSEY CASE LAW AND NOT THE NEW JERSEY UNIFORM COMMERCIAL CODE

The February 6, 2004 promissory note between the plaintiff, John Gerard and the defendants, Edward G. Gleason, Prime Plate Industries, Inc. and Corban Corporation is not governed by Article 3 of the Uniform Commercial Code. Article 3 of the New Jersey Uniform Commercial Code sets forth a large body of statutory law which defines a parties rights and obligations with regard to negotiable instruments. While a promissory note would ordinarily fall within the definition of a negotiable instrument pursuant to N.J.S.A. 12A:3-104a., that statute specifically defines a negotiable instrument as "an unconditional promise or order to pay a fixed amount of money and does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to payment of money..."

In the case at bar, the Agreement between the parties obligates Mr. Gleason to send Mr. Gerard copies of paid invoices from the "hot list" and also requires Mr. Gleason to issue a stock certificate for 5% of the shares of Prime Plate Industries to the John J. Gerard Foundation. (Gerard Decl.,¶ 13), (Russo Decl., ¶ 7, Ex. F). Since the stock shares were being issued to John Gerard as additional consideration for the February 6, 2004 loan, the issuance of those shares was

8

not a mere pledge of collateral.

N.J.S.A. 12A:3-104a (3) does permit a note to reference the pledging of collateral without

disqualifying it as a negotiable instrument under the New Jersey Uniform Commercial Code.

However, that exception does not apply in this case because the note required Mr. Gleason to

issue stock shares of Prime Plate Industries to the John Gerard Foundation as additional

consideration for the loan.  The parties agreement also obligated Mr. Gleason to produce invoices

and paid checks showing payment of the items listed on the hot sheet. (Russo Decl., ¶ 7, Ex. F).

Therefore, the February 6, 2004 agreement between the parties is governed by New Jersey case

law, as opposed to Article 3 of the New Jersey Uniform Commercial Code.


II.   THE PLAIN AND UNAMBIGUOUS LANGUAGE OF THE PARTIES' AGREEMENT
      OBLIGATES THE DEFENDANTS TO PAY THE PLAINTIFF UNDER THE LOAN
      AND THEREFORE THE COURT SHOULD GRANT THE PLAINTIFF'S MOTION
      FOR SUMMARY JUDGMENT.


Under New Jersey Law, where the terms of a contract are clear and unambiguous, there is

no room for interpretation or construction and the courts must enforce those terms as written.

Assisted Living Associates of Moorestown, LLP v Moorestown TP., 31 F. Supp. 2d 389 (D.N.J.

1998).  Courts are generally obligated to enforce contracts based on the intent of the parties, the

express terms of the contract, surrounding circumstances and the underlying purpose of the

contract.  Caruso v Ravenswood Developers, Inc. 767 A.2d 979, 337 N.J. Super 499 (App. Div.

2001).  Ambiguity exists in a contract if the terms of the contract are susceptible to two

reasonably alternative explanations.  Kaufman v Provident Life and Cas. Ins. Co., 828 F. Supp.

275, affirmed 993 F2d 877 (D.N.J. 1992).  The fundamental function of the Court is to enforce,

not rewrite, an agreement of contracting parties in accordance with their intentions as evidenced

9

by the contract. <u>Fidelity & Cas. Co. Of New York v Carll & Ramagosa, Inc.</u>, 243 F. Supp. 481, appeal dismissed 365 F. 2d 303 (D.N.J. 1965).

In the case at bar, the defendant Gleason does not dispute that his corporations are liable under the February 6, 2004 promissory note. (Russo Decl., ¶ 17, Ex. O, Gleason Dep. 52:3-5, Nov. 20, 2007). Instead, Mr. Gleason claims that he should not be liable under the February 6, 2004 note because he did not read the note and he did not subjectively intend to be bound by the note, despite the clear terms of the note. (Russo Decl., ¶ 17, Ex. O, Gleason Dep. 44:6-25, 45:1-4, Nov. 20, 2007). However, under New Jersey Law, the court is to focus on the objective intent of the parties manifested in terms of the agreement, and not the undisclosed subjective intent of one party or another. <u>Air Master Sales Co., v. Northbridge Park Co-Op, Inc</u>, 748 F. Supp. 1110 (D.N.J. 1990). Therefore, Mr. Gleason's subjective belief that he was not going to be personally liable on the February 6, 2004 note is irrelevant. In the unlikely event that Mr. Gleason failed to read the February 6, 2004 note prior to signing it, as he claimed in his deposition testimony, then Mr. Gleason bears the legal consequences of his actions.

Mr. Gleason offers no explanation as to why he should not be personally liable under the note or why he allegedly failed to read the note before signing it. After all, page one of the February 6, 2004 note clearly refers to Mr. Gleason as a "Promissor", and even lists his personal address. (Gerard Decl.,¶ 11), (Russo Decl., ¶ 7, Ex. F). Page three of the note is also signed by Mr. Gleason in his personal capacity, and was signed contemporaneously with page two of the note in Mr. Gerard's office on February 6, 2004. (Gerard Decl.,¶ 13), (Russo Decl., ¶ 7, Ex. F). Since Mr. Gleason always signed personally on all his company obligations to Mr. Gerard and/or Mr. Gerard's companies, he knew or should have known that he was signing personally on the

February 6, 2004 agreement. Failure to read the February 6, 2004 agreement is hardly a viable defense to the plaintiff's claim.

Mr. Gleason may argue that he did not sign page two of the note in his personal capacity and therefore he should not be liable for the $109,000.00 loan. Mr. Gleason may claim that page three of the note (which is signed by Mr. Gleason in his individual capacity) should not be read in conjunction with pages one and two (Russo Decl., ¶ 7, Ex. F). However, this argument must fail. Interpretation of a contract should accord with justice and common sense. Borough of Princeton v Board of Chosen Freeholders of County of Mercer, 755 A.2d 637, 333 N.J. Super. 310 (App. Div. 2000). Common sense dictates that the parties agreement consists of the three pages which were presented to Mr. Gleason on February 6, 2004 and signed contemporaneously as a single document. Page one of the document refers to Mr. Gleason as the "promissor" and page three of the document obligates Mr. Gleason to personally pay consideration for the loan in the form of a five percent stock transfer to the John Gerard Foundation. (Russo Decl., ¶ 7, Ex. F). For the above reasons, the Court should grant the plaintiff's motion for summary judgment against all three defendants.

III.   THE PARTIES' COURSE OF PERFORMANCE SUPPORT JOHN GERARD'S CLAIM AGAINST ALL THREE DEFENDANTS

The use of course of performance in interpreting a contract is recognized in § 202(4) of the Restatement (Second) of Contracts (1979), which states: "Where an agreement involves repeated occasions for performance by either party with knowledge of the nature of performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement."

11

In this case, the parties' course of performance supports the plaintiff's claim that Edward Gleason is personally liable under the February 6, 2004 loan agreement.  Mr. Gleason accepted the $109,000.00 loan proceeds in his personal capacity and deposited the funds into his personal checking account. (Gerard Decl.,¶ 14), (Russo Decl., ¶ 8, Ex. G, ¶ 9, Ex. H,¶ 10, Ex. I). On March 2, 2004, the defendant, Edward Gleason made a payment of $907.00 to John Gerard from his personal bank account.    (Gerard Decl.,¶ 14), (Russo Decl., ¶ 11, Ex. J).  The $907.00 payment corresponds with the first interest payment due under the note.   (Gerard Decl.,¶ 14), (Russo Decl., ¶ 7, Ex. F).  In light of the fact that the defendant, Gleason accepted the loan proceeds in his personal capacity, deposited those funds into his personal bank account and made at least one interest payment on the loan from his personal checking account, his conduct clearly shows that the parties intended Mr. Gleason to be personally liable on the February 6, 2004 note.

## **CONCLUSION**

For the above reasons, this Court should grant the plaintiff's motion for summary judgment on the Plaintiff's Amended Complaint as against all three defendants.

Respectfully submitted,

STEPHEN M. RUSSO, P.C.
Attorneys for Plaintiff

By: _____
STEPHEN M. RUSSO

Dated: January 21, 2009

12