NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN GERARD, | |
| Plaintiff, | Civil Action No.: 06-5869 (JLL) |
| v. | |
| | OPINION |
| EDWARD G. GLEASON, PRIME PLATE INDUSTRIES, INC., and CORBAN CORPORATION | |
| Defendants. | |

**LINARES**, District Judge.

This matter comes before the Court on a motion for summary judgment filed by the Plaintiff John Gerard. Plaintiff commenced this action against Defendants alleging claims for breach of contract and unjust enrichment. This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. The Court has considered the parties' submissions in support of and in opposition to the motion and decides the matter without oral argument as provided by Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion for summary judgment is grant in part and denied in part.

**I.     BACKGROUND**

Defendant Edward Gleason, involved in the steel-plating business, was sole owner and CEO of Prime Plate Industries, Inc. ("Prime Plate"). (Stmt. of Undisputed Mat'l Facts in Supp. of Pl.'s Mot. for Summ. J. Under L. Civ. R. 56.1 ¶ 2 [hereinafter "Pl.'s Fact Stmt."].) Mr.

Gleason was also the CEO of Corban Corporation ("Corban"). (Id. at ¶ 10.) Plaintiff John Gerard has an ownership interest in companies that lease equipment. (Id. at ¶¶ 1, 3-4.) Beginning in 2000, Mr. Gerard and Mr. Gleason had various business dealings involving their respective companies including leasing arrangements and loan agreements. (Id. at ¶¶ 1-4, 6.)

On July 2, 2002, Mr. Gerard loaned Prime Plate $100,000 (hereinafter "2002 Note"). (Id. at ¶ 6; Defs.' Response & Counter-Stmt. to Pl.'s Stmt. of Undisputed Mat'l Facts ¶ 6 [hereinafter "Defs.' Fact Stmt"].) Mr. Gleason signed the 2002 Note on behalf of Prime Plate and in his individual capacity. (Pl.'s Fact Stmt. ¶ 6.) Prime Plate and Mr. Gleason defaulted on this note. (Id. at 7.) Default judgment was entered against them in the amount of $100,833.33 on April 11, 2003. (Id.; Russo Dec., Ex. E.)

On February 6, 2004, Mr. Gerard agreed to make an additional loan of $109,000 to pay certain outstanding debt of Prime Plate ("2004 Note"). (Pl.'s Fact Stmt. ¶ 8; Defs.' Fact Stmt. ¶ 20; Pl.'s Resp to Defs.' Fact Stmt. ¶ 20.) The note came due on April 30, 2004, and provided, that if payment was not made in full by that date, a late fee would be due on any unpaid balance. (Pl.'s Fact Stmt. ¶ 9.) Between March 2, 2004, and March 13, 2006, Mr. Gerard received payments from Defendants totaling $17,147.33. (Id. at 13.) Mr. Gerard bifurcated these payments between the 2002 Note and the 2004 Note "in proportion to the principal owed on each loan." (Id. at 14.)

The parties dispute what comprises the actual document forming the 2004 Note. Both parties agree that the two typed pages entitled "Promissory Note" are included, but disagree whether a third page entitled "Prime Plate Industries Accounts Payable Hot List 4-Feb-04" ("Hot List") is part of the 2004 Note. Page one states: "[T]he undersigned Edward Gleason . . .

(collectively the "Promisors") and Prime Plate Industries, Inc. and Corban Corporation each as principals, jointly and severally, promise to pay [the loan amount]." (Russo Dec., Ex. A, at 6). On page two, the Notice section lists "Promisors;" only Prime Plate and Corban are listed. (Id. at 7.) Also, page two is signed by Mr. Gleason only in his capacity as CEO of Prime Plate and Corban. (Id.) On the other hand, Mr. Gleason signed the Hot List in his individual capacity. (Id. at 33.) In addition to a typed list of accounts payable, the Hot List page includes the following handwritten provisions:

- Gleason will send copies of invoices and paid checks to cover all items listed above.
- Gleason will issue a stock certificate for 5% of the shares of PPI Corp. (Inc.) as follows: 5% to John J. Gerard Foundation.

(Id. at 33.) Both page two and the Hot List were signed by Mr. Gleason on February 6, 2004. (See id. at 6-7, 33.) Finally, the first two pages do not reference the Hot List and the Hot List does not reference the other two pages. (See id.) Mr. Gerard presently moves for summary judgment against all defendants arguing that their liability under the 2004 Note is clear.

## II.   LEGAL STANDARD

A court shall grant summary judgment under Rule 59© of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). An issue is genuine where reasonable jurors could find for the non-moving party and a fact is material if it might affect the outcome of the case under the governing law. Anderson, 477 U.S. at 248. The moving party bears the initial burden of showing the absence of a genuine issue

of material fact . Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The opposing party must then provide "specific facts" to establish the existence of a genuine issue of material fact. Anderson, 477 U.S. at 248. A court must consider all facts presented and the reasonable inferences drawn from them in the light most favorable to the non-moving party. See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

### III. DISCUSSION

Although Mr. Gerard, the plaintiff, presently moves for "an Order granting summary judgment on [his] Amended Complaint," his motion only addresses his breach of contract claim; it does not address unjust enrichment. Therefore, this Court only addresses this cause of action.

#### A. Choice of Law

On page two, the promissory note states that "this Note shall be governed by and construed in accordance with the laws of the State of New Jersey." (Russo Dec., Ex. A, at 7.) Neither party contests this provision or the application of New Jersey law, with both citing to it as controlling. Thus, this Court applies New Jersey law.

#### B. Prime Plate & Corban

"Prime Plate and Corban do not contest their obligation under the 2004 Note." (Defs.' Mem. of Law in Opp'n to Pl.'s Mot. for Summ. J., at 5 [hereinafter "Opp'n"].) They only contest the amount of damages due, including the amount of attorney's fees sought.

The 2004 Note states that "[a]ny payment under this Note shall be credited first to accrued interest, and the remainder to the Principal outstanding." (Russo Dec., Ex. A, at 6.) The 2004 Note was signed February 6, 2004. Between March 2, 2004 and March 13, 2006, Defendants paid Plaintiff a total of $17,147.33. Plaintiff allocated the payments that he received from December

17, 2004 to March 13, 2006 between the 2004 Note and the defaulted 2002 Note in proportion to the principal owed on each loan.  Defendants argue that the payments should have been allocated solely to the 2004 Note, reducing the amount of damages due in this action; Defendant Gleason submitted an affidavit stating his position that all payments after the date of the 2004 Note were exclusively for that note.  On the other hand, Plaintiff points to testimony by Defendant Gleason where he states that Plaintiff did not tell him how he was applying the payments, and he did not give any special instructions regarding the payments from Defendants.  Thus, the parties contest whether the payments made by Defendants were made "under this Note."  There are facts which support both positions.  The timing of the payments, the fact that an entry of judgment on the 2002 Note was entered in April of 2003, prior to any of the payments at issue here being made, and Mr. Gleason's certification support Defendants argument.  The admission that there were no special instructions regarding the payments support Plaintiff's argument that the payments were not intended to be applied solely to the 2004 Note.  Therefore, this Court finds that a genuine issue of a material fact exists as to the amount due from Prime Plate and Corban under the 2004 Note.

With respect to attorney's fees, Prime Plate and Corban argue "that a substantial portion of the legal fees attempting to be collected and assessed against them were incurred to prove that Mr. Gleason was individually liable." (Opp'n, at 5.)  Mr. Gerard counters that these defendants "vigorously defended" against his attempt to obtain a default judgment against them, increasing the fees.  Given that there are issues of fact with respect to the amount due under the 2004 Note, any argument over the appropriate amount of legal fees is premature.  Therefore, this Court grants summary judgment to Mr. Gerard against Prime Plate and Corban with respect to liability on the

breach of contract claim, but denies summary judgment against these defendants with respect to the amount of damages.

    C.    **Mr. Gleason**

Mr. Gerard argues that Mr. Gleason is personally liable on the 2004 Note because Mr. Gleason signed the Hot List in his individual capacity. Mr. Gerard contends the 2004 Note is three pages and includes the Hot List. Mr. Gleason argues that the 2004 Note is only two pages, and that he only signed it in his capacity as CEO of Prime Plate and Corban. He argues that the Hot List is a separate agreement in which he did not agree to be personally liable for the $109,000 loan.

Mr. Gerard also argues that New Jersey common law and not the New Jersey Uniform Commercial Code ("NJUCC") applies. He acknowledges that "a promissory note would normally fall within the definition of a negotiable instrument pursuant to N.J.S.A. 12A:3-104," but argues that the 2004 Note is not a negotiable instrument under the NJUCC because, as he argues, the three page note is conditioned on Mr. Gleason sending copies of invoices and issuing a stock certificate to Mr. Gerard. Section 12A:3-104 of the NJUCC states that a negotiable instrument is "an unconditional promise or order to pay a fixed amount of money . . . [that] does not state any other undertaking or instruction by the person promising or ordering payment to any act in addition to [the] payment of money." N.J. Stat. Ann. § 12A:3-104(a)(3). But, under the facts of this case, this argument is putting the cart before the horse–the note in this case is only conditional if the Hot List is part of the 2004 Note. If it is not, the NJUCC may be applicable, at least in so far as pages one and two are concerned. This Court need not resolve this issue at the present time. The only question presently before the Court is whether, as a matter of law, Mr. Gerard has

demonstrated that no genuine issue of fact exists as to whether Mr. Gleason is personally liable on the 2004 Note. The Court finds that regardless of how you view the 2004 Note, he has not met this burden.

Mr. Gerard presently argues that the 2004 is three pages, including the Hot List, and that Mr. Gleason admittedly signed the Hot List in his individual capacity. Therefore, he argues, no question exists that Mr. Gleason is personally liable for the $109,000 loan. As acknowledged by Mr. Gerard in his reply brief, "[o]n June 12, 2007, [Mr. Gerard] submitted answers to interrogatories which acknowledged that Gleason did not sign the February 6, 2004 note in his personal capacity." (Mem. of Law in Supp. of Pl.'s Mot. for Summ. J. & in Reply of Defs.' Opp'n Papers, at 8 [hereinafter "Reply"].) Specifically, Mr. Gerard responded:

> Edward G. Gleason executed the Promissory Note in the capacity of Chief Executive Officer of Prime Plate Industries and Corban Corporation. Although Edward G. Gleason did not sign the Promissory Note in an individual capacity, it was the parties' intent that Edward G. Gleason act as a [promisor]. Mr. Gleason's failure to sign the Promissory Note in his individual capacity was an inadvertent mistake by the parties.

(Haltzman Dec., Ex. C, ¶ 6, at 5-6.) Mr. Gleason argues that this answer is an admission by Mr. Gerard that the 2004 was only two pages and that it was not signed by Mr. Gleason in his individual capacity, and, as such, Mr. Gerard is judicially estopped from making a contrary argument now. Mr. Gerard disagrees, arguing that "at the time [he] submitted his answers to interrogatories, he had not fully developed the legal theory of the case," (Reply, at 8); he presently argues that the Hot List is part of the 2004 Note. An "answer to [an] interrogatory, although not conclusive, is admissible as evidence against [a party] to be weighed with all the other evidence by the trier of fact." Fidelity & Deposit Co. v. Hudson United Bank, 653 F.2d 766, 777 (3d Cir.

1981); see also Bell v. A-Leet Leasing Corp., 863 F.2d 257, 259 (2d Cir. 1988) ("When there is conflict between answers in response to interrogatories and answers obtained through other questioning, either in deposition or trial, the finder of fact must weigh all of the answers and resolve the conflict.") (internal quotations omitted). Thus, an interrogatory answer does not estop a party from arguing a modified position in the case. Fidelity & Deposit Co., 653 F.2d at 777.

While Mr. Gerard's answer may not estop him from making his present arguments, this Court finds that the interrogatory answer does raise a question of fact as to whether the 2004 Note includes the Hot List; his answer supports Mr. Gleason's argument that it does not. Also supporting Mr. Gleason's position that the 2004 Note only includes pages one and two, which he did not sign in his individual capacity, is the fact that page two ends with signatures (implying the end of the document) and the fact that neither page one or two reference page three and vice versa. Specifically, for purposes of the present motion, the Hot List, the only page signed by Mr. Gleason in his individual capacity, does not state that Mr. Gerard is assuming liability for the $109,000 loan. On the other hand, the documents were signed on the same day, apparently contemporaneously, and Defendants state in their brief that "*[a]s part of the loan* of $109,000 to Prime Plate, Mr. Gerard wanted to be assured that the accounts payable on the 'Hot List' were actually paid." (Opp'n, at 7 (emphasis added).) Therefore, the Court finds that a genuine issue of material fact exists as to whether the Hot List is part of the 2004 Note.

The Court also finds that even if the 2004 Note were found to be made up of only pages one and two, Mr. Gerard also has not met his burden of demonstrating that no fact exists as to Mr. Gleason's personal liability. Although Mr. Gleason is listed as a Promisor on page one, he is not listed as a Promisor on page two, and, more importantly, he only signed page two in his capacity

as CEO of Prime Plate and Corban. Under the NJUCC, "[a] person is not liable on an instrument unless the person signed the instrument, or the person is represented by an agent or representative who signed the instrument and the signature is binding on the represented person under 12A:3-402." N.J. Stat. Ann. § 12A:3-401; <u>Triffin v. Pomerantz Staffing Services, L.L.C.</u>, 851 A.2d 100, 101 (N.J. Super. Ct. App. Div. 2004). Under New Jersey common law, whether terms and surrounding circumstances of a written contract are clear or ambiguous is a question of law, but, if a contract provision is found to be ambiguous, the fact-finder must interpret its meaning. <u>In re Teamsters Ind. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc.</u>, 989 F.2d 132, 135-36 (3d Cir. 1993). Therefore, even applying New Jersey common law, such inconsistencies between pages one and two make the document with respect to whether Mr. Gleason was a Promisor of the $109,000 loan ambiguous and preclude a finding that pages one and two clearly make Mr. Gleason personally liable for the loan. Based on the foregoing, this Court finds that, regardless of how the document is viewed, a genuine issue of material fact exists as to Mr. Gleason's personal liability; summary judgment against Mr. Gleason is denied.

**IV.   CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment is granted as to liability against Defendants Prime Plate and Corban and denied with respect to damages for these Defendants. Summary judgment against Mr. Gleason is denied. An appropriate Order accompanies this Opinion.

DATED: September 2, 2009                    /s/ Jose L. Linares
                                            JOSE L. LINARES
                                            UNITED STATES DISTRICT JUDGE